## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
## SOUTHERN DIVISION

**FRED STANFORD SPICER,** *a prisoner*
*incarcerated at the Mississippi State*
*Penitentiary in Parchman, Mississippi*                    **PETITIONER**

**VS.**                                   **CIVIL ACTION NO: 1:13-cv-377-LG-JCG**

**MARSHALL L. FISHER,** *Commissioner,*
*Mississippi Department of Corrections*, and
**JIM HOOD,** *Attorney General of the State*
*of Mississippi*                                       **RESPONDENTS**

## REPORT AND RECOMMENDATION

Before the Court is a Petition for Writ of Habeas Corpus (ECF No. 1)

pursuant to 28 U.S.C. § 2254, filed by Fred Stanford Spicer with an accompanying

Memorandum in Support (ECF No. 2) on September 26, 2013. Mr. Spicer is

currently incarcerated at the Mississippi State Penitentiary in Parchman,

Mississippi. After much delay, Respondents Marshall L. Fisher and Jim Hood filed

a Response (ECF No. 28) on November 24, 2015. Petitioner was granted leave to file

a reply (ECF No. 30) and thereafter filed a Reply (ECF No. 35) on February 15,

2016. Having considered the relevant law, the record, and the submission of the

parties, the undersigned recommends that because Mr. Spicer has not exhausted

his claims, he should be required to return to the Mississippi Supreme Court in

order to present newly discovered evidence. Furthermore, this case should be stayed

pending a final adjudication of his request to file a successive petition in Mississippi

state court.

## PROCEDURAL HISTORY

On April 30, 2003, Fred Spicer was found guilty of the capital murder of Edmund Hebert in the Circuit Court of George County, Mississippi. A unanimous jury sentenced him to death on May 1, 2003. Spicer appealed his verdict and his sentence, both of which were affirmed by the Mississippi Supreme Court. *Spicer v. State*, 921 So. 2d 292 (Miss. 2006). He then filed for postconviction relief, and the Mississippi Supreme Court granted his petition in part. Specifically, the court found that Spicer had made a sufficient showing of his trial counsel's ineffectiveness at the sentencing phase of his trial to be entitled to an evidentiary hearing on that issue. Spicer was denied relief on all of his other claims.

An evidentiary hearing was held in the Circuit Court of George County on March 15-16, 2011, where substantial additional evidence was introduced in support of Spicer's ineffective assistance claim. After taking the case under advisement, the trial court entered a Memorandum Decision and Order on February 22, 2012, finding that the mitigation evidence offered at the sentencing phase of Spicer's original trial was "woefully inadequate to allow the jury to give individualized consideration of Spicer's background and weigh the merits of imposing a sentence less than death." (ECF No. 1-8, *Spicer v. Mississippi*, No. 2009-0266(3) (Miss. George Cty. Cir. Ct. Feb. 22, 2012), at 12). For that reason, the court vacated and set aside Spicer's sentence of death. The court held another hearing on September 27, 2012, during which the State announced in open court that it waived seeking the imposition of the death penalty. (ECF No. 1-9, *State v. Spicer*, No. 20-

2002-10,006(3) (Miss. George Cty. Cir. Ct. Sept. 27, 2012)). Because only one other sentence was available under the law, Spicer was sentenced to life imprisonment without the possibility of parole. *Id.*

Spicer did not seek further review of his case in state court, instead filing the instant Petition for a Writ of Habeas Corpus with this Court. In his Petition, Spicer relies on the same new evidence offered in the trial court in arguing that he is entitled to habeas relief because his trial counsel was also ineffective at the guilt phase of his trial and the Mississippi Supreme Court unreasonably denied him relief on this issue. Spicer also argues that the state court unreasonably denied him relief on his claim of cumulative error. Alternatively, Spicer argues that he is entitled to relief on these claims even without resorting to the new evidence presented in the Circuit Court.

For the reasons more fully set out below, the undersigned finds that Spicer has not exhausted his claims regarding ineffective assistance of counsel during the guilt phase of his trial, and he must return to state court in order to exhaust these claims.

## FACTS

At the time of his death, Edmond Hebert was living in a small trailer in Benndale, Mississippi, near Lucedale, in George County. His mother and stepfather lived in a trailer a few blocks away. Hebert worked various jobs as a sandblaster and painter, but his main occupation was laying linoleum flooring. He was working as a roofer when he was killed in October 2001. Among Hebert's possessions were a

green Nissan pickup truck and a sword that hung in a display on a wall of his trailer.

A few weeks before he was killed, Hebert invited Fred Spicer to live with him in his trailer. Hebert approached his boss about giving Spicer a job on the roofing crew, and his boss, Johnny Butler, hired Spicer. People who knew Hebert became accustomed to seeing him with Spicer, and, on occasion, Spicer was seen driving Hebert's truck alone.

On or about October 11, 2001 was the last time Butler saw Hebert. It was the end of a workday, and Butler gave both Hebert and Spicer their paychecks. Later that evening, Hebert and Spicer showed up at Larry Beauchamp's house for beer and conversation. Beauchamp had known Hebert for a couple of years but had only met Spicer after he moved into Hebert's trailer.  At some point in the evening, the topic of conversation turned to the possibility that Hebert might have to leave George County to return to Louisiana; he asked Beauchamp to take care of his dog in case he had to leave. Spicer said that he would like to have the dog, but Hebert responded that he had already given it to Beauchamp. According to Beauchamp, this exchange soured Spicer's attitude. Hebert and Spicer then left Beauchamp's trailer an hour or so later in Hebert's truck.

When neither Hebert nor Spicer appeared at work the next day, Butler called Hebert's mother, Patricia Elder, to tell her that her son was fired. Mrs. Elder went to Hebert's trailer, but his truck was not there; she assumed he would not be either.

She returned to the trailer two more times that day, but the truck was not present, so she returned to her trailer.

On October 12, Sergeant Brian White, a deputy with the Jackson County Sheriff's Department, was driving on Market Street in Pascagoula when he noticed a green Nissan pickup truck facing him at the intersection of Market and Highway 90. As he was turning onto Highway 90, Deputy White noticed that the truck's driver, a white male, "put a cold stare" on him. The truck also turned onto Highway 90, and the driver kept staring at Deputy White. At the same time, a white female passenger put her hand over her face and tried to squat down in the seat. Deputy White changed lanes to follow the truck, and he noticed that the driver continued to look at him through the rear-view mirror. While Deputy White called in the registration to dispatch, the truck moved from the far left-hand lane of Highway 90 to the far right-hand lane and turned into a restaurant's parking lot, all without a turn signal. Traffic prevented Deputy White from changing lanes to turn into the parking lot, so he pulled into another parking lot and waited. Only a few seconds later, the truck passed that lot, but Deputy White was again prevented by traffic from following it. He saw the truck turn into a motel parking lot. When Deputy White was finally able to pull into that lot, he saw that the two individuals had gotten out of the truck and were trying to reach places where they could hide from him.

Deputy White apprehended the driver, who refused to give his name and threw away the keys to the truck he had been driving. The driver denied tossing the

keys and again refused to give the deputy any information. At about that time, dispatch notified Deputy White that the truck was registered to Edmond Hebert. The driver denied being Hebert. White turned the driver over to another officer and went to look for the female passenger, who he found hiding behind a garbage can. The passenger was Angel Hinger, and she identified the driver as Freddie Spicer.

Deputy White arrested Spicer on three moving violations and conducted an inventory search of the truck. Officers found a camouflage jacket and a sword. Paperwork inside the truck indicated that it was registered to Edmond Hebert. The officers ran Spicer's name through the National Crime Information Center database, which returned a valid "hit" out of Franklin, Massachusetts for burglary. After transporting Spicer to the Detention Center, Deputy White asked a detective to call the George County Sheriff's Department and ask them to contact the vehicle's owner.

George County Deputy John Hilbun was accordingly dispatched to Hebert's residence for a welfare check. Deputy Hilbun had trouble finding the address, so he stopped to ask directions from a man who turned out to be Hebert's stepfather, James Elder. Elder and Deputy Hilbun went to Hebert's trailer together, and Elder forced the door open. Inside, they found Hebert's body on the couch in his living room, covered with a blanket. Elder removed a tool box sitting on the blanket and uncovered Hebert's face. Hebert was lying on his back. There were bloodstains on the walls, the door, the ceiling, and the floor of the living room, as well as on a lampshade. According to an expert who testified for the State, the blood stains were

cast-off blood stains, consistent with blunt force trauma or a beating. Once notified that Hebert was dead, Jackson County officers seized Spicer's clothing.

The pathologist who performed the autopsy testified that he found numerous injuries on Hebert's body, including a three and one-half inch long cut over his forehead, bruises around both eyes, a cut above the right eye and the right eyelid, and an abrasion over the bridge of his nose. According to the pathologist, the cuts could have been from the blunt edge of the sword recovered from Hebert's truck. There were also numerous injuries to Hebert's arms and hands – including broken bones – which the pathologist characterized as defensive wounds. The fatal injury was the blow to the forehead that caused the long laceration. That blow fractured Hebert's skull. Subsequent testing revealed that blood found on the sword recovered from Hebert's truck, as well as bloodstains on Spicer's clothing, all came from Hebert.

Spicer was charged with capital murder while in the commission of a robbery. After hearing the evidence summarized above, the jury found him guilty. At the sentencing hearing, the State presented evidence that Spicer had been convicted in a prior case of two counts each of robbery, conspiracy, and kidnapping in Rhode Island. In another case, he was convicted of two counts of assault with a dangerous weapon and one count of assault with intent to murder.  Spicer's attorneys presented testimony from his mother and his aunt. Both women's testimony was brief. Bobbie Nell Spicer identified herself as Spicer's mother and defense counsel asked her whether she had anything to say about Spicer's penalty. However, the

court sustained an objection to the question. Defense counsel then elicited testimony on her knowledge of Spicer's previous incarceration in Rhode Island and her belief that he had paid his debt to society for those crimes. Regina Walters, Spicer's aunt, gave similar testimony. After hearing the evidence, the jury returned a verdict of death, finding that Spicer had been previously convicted of a felony involving the use or threat of violence and that the murder was committed for pecuniary gain during the course of a robbery.

## STATE COURT REVIEW

Spicer, represented by trial counsel, appealed his conviction and sentence on several grounds; the Mississippi Supreme Court denied relief. *Spicer v. State*, 921 So. 2d 292 (Miss. 2006). In his postconviction proceedings, Spicer was represented by Michael Adelman of Hattiesburg, Mississippi; Amy Van Gelder, of Chicago, Illinois; and David Pehlke, from Washington, D.C. Among the grounds for relief urged were (1) ineffective assistance of counsel, at both the guilt and sentencing phases of trial, (2) due process violations, (3) cumulative error, (4) the unconstitutionality of Mississippi's lethal injection protocol, and (5) mental retardation.

The Mississippi Supreme Court held that Spicer did not meet the *Chase v. State* test for further evaluation of his mental retardation claim and that he was therefore not entitled to relief on the issue. *Spicer v. State*, 973 So. 2d 184, 208 (Miss. 2007) (citing *Chase v. State*, 873 So. 2d 1013, 1023 (Miss. 2004)). The court also found that the challenge to Mississippi's lethal injection protocol was

procedurally barred because it was not raised on direct appeal and was also substantively without merit because it lacked sufficient evidentiary support. *Id.* at 207-08. The cumulative error claim was likewise unsupported. *Id.* at 206.

Both of Spicer's due process claims were rejected as well. He alleged violations based on the fact that (1) he appeared before in the jury in shackles, and (2) some of the jurors in his case considered his failure to testify as evidence of his guilt. Because his courtroom appearance in shackles had already been rejected in his direct appeal, and because Spicer had failed to offer any evidence or argument to change that holding, the Mississippi Supreme Court rejected it again on collateral review. *Id.* at 204-05. Spicer's second due process claim was rejected because it was founded on only hearsay evidence – the affidavit of an investigator who had interviewed some of the jurors from Spicer's trial. *Id.* at 205-06.

Only the ineffective assistance claims remained to be considered. Establishing ineffective assistance of counsel requires proving both (1) deficient performance and (2) resulting prejudice. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). The court found no grounds for relief during the guilt phase of the trial. However, the court did grant relief on the claim that counsel was ineffective at the sentencing phase of Spicer's trial.[1] Spicer argued that his trial counsel's failure to investigate and present mitigating evidence of Spicer's character and childhood history constituted constitutionally deficient representation. *Id.* at 190-96.

---

[1] Spicer made two arguments regarding ineffectiveness at the sentencing phase. His second argument, that his trial counsel was ineffective for failing to present evidence of mental impairment as mitigating evidence, was rejected because the evidence of mental impairment included a doctor's report indicating that he was malingering in order to mitigate legal problems. *Spicer*, 973 So. 2d at 190-92. The court presumed this to be a strategic trial decision. *Id.* at 192.

After reviewing the mitigation evidence presented during the sentencing phase, the court found that presenting only Spicer's mother and aunt for brief questioning when other substantial mitigation testimony was available could be grounds for relief. *Id*. at 191. The court specifically acknowledged the number of potential witnesses who submitted affidavits stating that they would have given mitigating testimony had they been called to trial: "[I]t is difficult to ascertain trial counsel's reasons for not bringing some of these factors to the attention of the jury." *Id*. This combined with the absence of notes in trial counsels' files led the court to conclude that "Spicer has raised minimally sufficient allegations to be entitled to a hearing concerning the effectiveness of his counsel during the penalty phase of his trial." *Id*. Turning to the prejudice requirement, the court determined that it could not make that determination on the record before it: "Therefore, we find that Spicer should be granted leave to proceed in the trial court in an evidentiary hearing, limited to Spicer's claim that his attorneys were ineffective for failing to investigate and present mitigating evidence of Spicer's character and childhood history at the penalty phase of Spicer's trial." *Id*.

The Circuit Court of George County conducted an evidentiary hearing on March 15-16, 2011. In connection with those proceedings, both of Spicer's trial lawyers submitted to depositions and then testified, as did family members and expert witnesses. Additionally, 146 exhibits were introduced into evidence, including family, school, and military records, as well as the records of an earlier incarceration in Rhode Island. The trial judge reviewed this evidence and

concluded, "This evidence demonstrates a substantial amount of potentially mitigating evidence and portrays a sordid version of Spicer's childhood, one characterized by deprivation, neglect, physical abuse, violence, and substance abuse." (ECF No. 1-8, at 4). Moreover, "neither [of Spicer's trial attorneys] provided any reasonable explanation for the complete absence of any investigation or preparation for the sentencing phase of Spicer's capital murder trial." *Id.* at 8. The court found that both the performance and the prejudice prongs of the *Strickland* test had been met because "the absence of any meaningful mitigation introduced for the jury's consideration established a 'probability sufficient to undermine confidence in the outcome.'" *Id.* at 13 (quoting *Strickland*, 466 U.S. at 693-94).

After the State announced that it had waived seeking the imposition of the death penalty, the court sentenced Spicer to life imprisonment without the possibility of parole. (ECF No. 1-9, at 2). No further appeal or review of the case was made in state court.

## ANALYSIS

### 1.    Standard of review

Congress passed the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. 104-132, 110 Stat. 1244 (codified as amended at 28 U.S.C. 2254), to curb perceived abuses of the writ of habeas corpus caused by "a conception of federal/state relations that undervalued the important interest in finality served by state procedural rules and [caused] significant harm to the States that results from the failure of federal courts to respect them." *Coleman v. Thompson*, 501 U.S. 722,

11

724 (1991); *see also Baze v. Rees*, 553 U.S. 35, 69 (2008) (Alito, J., concurring)

(stating that the AEDPA "was designed to address this problem"). According to the

Conference Committee Report that attended the passage of the bill,

> This title incorporates reforms to curb the abuse of the statutory writ of habeas corpus, and to address the acute problems of unnecessary delay and abuse in capital cases. It sets a one year limitation on an application for a habeas writ and revises the procedures for consideration of a writ in federal court. It provides for the exhaustion of state remedies and requires deference to the determinations of state courts that are neither "contrary to," nor an "unreasonable application of," clearly established federal law.

H.R. Conf. Rep. 104-518, 94th Cong., 2d Sess. 111 (1996).

The standard of review referenced in the Report is codified at 28 U.S.C. §

2254, which provides,

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim -
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.
>
> (e)(1)  In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

Because of AEDPA's focus on the respect owed by federal courts to the states and their procedural rules, all applicants seeking federal habeas relief under § 2254 are required to exhaust all claims in state court prior to requesting federal collateral relief. *See Edwards v. Carpenter*, 529 U.S. 446 (2000); *Coleman*, 501 U.S. at 729-55 (1991); *Moore v. Quarterman*, 491 F.3d 213, 220 (5th Cir. 2007). The exhaustion requirement is satisfied when the substance of the federal habeas claim has been fairly presented to the highest state court in a manner that adequately developed the factual basis for the claim. *Williams v. Taylor*, 529 U.S. 420, 429-30 (2000). That presentation must also alert the state court as to the legal basis for the claim. *Baldwin v. Reese*, 541 U.S. 27, 29 (2004).

The Supreme Court further addressed the scope of habeas review in *Cullen v. Pinholster*, 563 U.S. 170 (2011), holding that habeas review conducted under § 2254(d)(1) (the applicable section for when the state court has reviewed a claim on the merits) must be limited to the record that was considered in state court. *Id.* at 180-185. The basis for the ruling was "Congress' intent to channel prisoners' claims first to the state court." *Id.* at 181-82. A district court may still conduct hearings under § 2254(e)(2) where a petitioner has failed to develop the factual basis of his claim in state court, but the circumstances under which such a claim may be raised are severely limited. *Id.* at 185; *Smith v. Cain*, 708 F.3d 628, 634-35 (5th Cir. 2013).

The Supreme Court's interpretation of federal habeas law compels this Court to undertake a rigorous examination of habeas claims, with an eye towards protecting the state court's judgment from federal interference. That review must be

based solely on the record before the state court and must give the state court's decision the benefit of the doubt, unless it "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 562 U.S. 86, 103 (2011).

## 2.     Findings of Fact and Conclusions of Law

Spicer seeks to use the evidence and testimony presented to the trial court on remand in support of his claim that counsel was ineffective in the guilt phase of his trial. Respondents rely on the authority of *Pinholster*, 563 U.S. 170, and argue that insofar as Spicer's claims are based on evidence never reviewed by the Mississippi Supreme Court, the claims are unexhausted and barred from review.

In response, Spicer cites *Ward v. Stephens*, 777 F.3d 250, 258 (5th Cir.), *cert. denied,* 136 S. Ct. 86 (2015), arguing that (1) his claim *is* exhausted and (2) the new evidence *may* be considered because it supplements, but does not fundamentally alter, his claim. Alternatively, he argues that if his claim is found to be altered by the new evidence such that it is unexhausted, then his case should be stayed to permit him to file a successive writ with the Mississippi Supreme Court. Respondents counter with Fifth Circuit authority construing *Pinholster* to mean that where a claim has been adjudicated on the merits, a federal court's review is strictly limited to the record before the state court, regardless of the import of the new evidence. *Lewis v. Thaler*, 701 F.3d 783, 791 (5th Cir. 2012).

In his state court postconviction petition, Spicer argued that his trial counsel rendered ineffective assistance in the guilt phase of his trial by failing to conduct any investigation into the facts. In support of that claim, he argued that the billing statement submitted by attorney Darryl Hurt showed that he met with his client for only four hours in the ten months leading up to the trial. There was no time record for co-counsel.  Spicer maintained that there was no meaningful consultation to develop a defense and that a more thorough consultation "would have led to an investigation into the facts and the discovery of information favorable to the defense." (ECF No. 32-1, at 85-86). He also argued that the total amount of time billed by Hurt – 63.25 hours – was inadequate to support a claim that he investigated the facts of Spicer's case.

According to Spicer, the lack of consultation showed that his counsel "chose to rely on a self-defense claim without considering the viability of alternative defense strategies." *Id.* at 85. Spicer argued that counsel's primary strategy was to disprove the underlying defense of robbery. Another possible theory, self-defense, necessarily required that Spicer testify; however, Spicer argued that his attorneys failed to prepare him for direct or cross-examination. Thus, when Spicer refused to testify, his counsel had no defense to present, and the self-defense strategy was abandoned midway through the trial.

In addition to failing to consult with him, Spicer argued that his attorneys failed to conduct an adequate investigation. Spicer reviewed the forensic evidence that was presented at trial in order to demonstrate how a more thorough

investigation would have effectively countered it. For example, Spicer asserted that the pathologist who testified for the prosecution, Dr. Steven Hayne, was mistaken in his conclusion that Hebert was likely killed by his own sword. Spicer offered the testimony of another expert, who analyzed the evidence and concluded that the sword was not the murder weapon. Spicer also maintained that trial counsel failed to rebut the DNA evidence offered at trial, which he submits was inconclusive. He based this argument on testimony and evidence indicating (1) that Hebert's blood and a third party's blood were mixed on the blade of the sword and (2) that the small amount of blood found on Spicer's clothing contradicts the theory that the bloodstains resulted from the murder.

Spicer presented several affidavits of potential witnesses who said that they were not contacted by defense counsel. Many of those people could have offered mitigation testimony; however, Spicer contended that some of those witnesses could have offered testimony relevant to guilt or to impeach the testimony of the prosecution's witnesses. As examples, Spicer offered the testimony of Michael Jones and Angel Hinger, both of whom were with Spicer immediately before his arrest. Spicer argued that a more thorough investigation of their backgrounds could have enabled trial counsel to conduct a more thorough cross-examination of those witnesses. Additionally, Spicer contended that had counsel reviewed the prior statement given by Arthur Creel to the George County Sheriff's Department, they would have discovered it to be inconsistent with Creel's trial testimony.[2]

---

[2] Spicer argues that in Creel's trial testimony, Creel said that he saw Spicer and Hebert enter the trailer together at about 11:00 p.m. on the night of the murder, but his prior statement said that

In considering Spicer's claim that counsel failed to consult with him prior to trial, the Mississippi Supreme Court noted that it was based on Hurt's billing records. The court found those records to be an inadequate basis for relief, observing that, as the George County Public Defender, Barnett – whom the court determined was lead counsel – was not required to submit time records, and "Spicer makes no assertion as to the number of hours Barnett spent on the case." 973 So. 2d at 193. The court found that the jury instructions submitted by Spicer's attorneys, as well as their cross-examination of the witnesses, demonstrated that they had formulated a self-defense theory. *Id*. Spicer's refusal to testify, even in the face of counsel's advice that he do so to support that theory, undermined that theory. The colloquy that occurred between trial counsel, Spicer, and the trial judge on that subject demonstrated that, not only did counsel's trial strategy rely on the theory of self-defense, but it was obvious that counsel had consulted with Spicer about that theory. *Id*. at 194.

Spicer's claim that his counsel failed to conduct a factual investigation was also belied by the record, said the court, which showed "that counsel were fully

Hebert and Spicer left the trailer together at around 10:00 p.m. that evening. Spicer notes that later in the interview, Creel said that he went to bed between 8:00 and 9:00 p.m. on the night of the murder and did not awaken until the following morning.

Without making any factual findings, the Court notes that this may not be an accurate representation of Creel's trial testimony. At trial, Creel stated that he saw Hebert and Spicer come in around dinnertime, at 11:00. In Mississippi, the term "dinner" is as likely to be applied to the mid-day meal as to the evening meal, often referred to as "supper." In his pretrial statement, Creel said that Spicer and Hebert came and went several times that morning, the last being around 10:00. If his statement is read in its entirety, the chronology of events that Creel recalled from that day clearly places Spicer's and Hebert's arrival as occurring in the middle of the day. In neither his trial testimony nor his pretrial statement does Creel refer to seeing them in the evening. His pretrial statement refers to them leaving "after dinner," while he was lying down to take a nap. Later, he said, "Truck didn't come no [sic] Friday at all, Thursday night at all as far as I know I did not see no truck at all on Thursday night or Friday until uh, the law come over and found, you know, found him in the trailer." (ECF No. 32-4, at 99).

prepared for cross-examination of the State's witnesses, and were able to question the witnesses about details not brought out on direct examination." *Id*. Numerous sub-claims were disposed of on grounds that they did not meet the standard set out in *Strickland*, 466 U.S. 668. For all of these reasons, the Mississippi Supreme Court rejected Spicer's claim that his attorneys were ineffective during the guilt phase of his trial.

In his habeas petition, Spicer continues to argue that his trial counsel were ineffective because they inadequately prepared for the guilt phase of his trial, thereby missing crucial exculpatory and impeachment evidence that could have created doubt in the jury's mind about his guilt. After enumerating the instances in which he believed that the Mississippi Supreme Court unreasonably applied the law on ineffectiveness and made factual findings that were erroneous, Spicer highlighted several statements made by counsel during the postconviction evidentiary hearing conducted in the trial court that he claims "confirmed and corroborated the evidence of trial counsel's guilt phase ineffectiveness that was originally presented to the Mississippi Supreme Court." (ECF No. 2, at 20).

The undersigned disagrees with Spicer's assessment that the new evidence merely "confirms and corroborates" the arguments made in state court. To the contrary, this new testimony of counsel "fundamentally alter[s] the legal claim[s]" that Spicer made in his original post-conviction petition to the Mississippi Supreme Court. *Ward*, 777 F.3d at 258 (first alteration in original) (citations omitted).[3] That

---

[3] The Fifth Circuit explained in *Ward,*

court premised its decision on, among other things, the State's argument that Hurt's billing statement was not determinative as to the efforts put forth on the case because Barnett was likely the lead attorney and the lawyer spending the most time preparing for trial. *See Spicer*, 973 So. 2d at 192-94. That finding is seriously compromised by Barnett's and Hurt's testimony at the evidentiary hearing that Hurt was lead counsel and Barnett's position was secondary. (ECF No. 1-6, at 73-74, 108).

The court found it "apparent from the record" that the primary strategy was to argue self-defense, a strategy that was torpedoed when Spicer refused to testify. *Spicer*, 973 So. 2d at 193. Hurt's testimony that he did not know whether he expected Spicer to testify until the trial counters the assumption that self-defense was the primary strategy. (ECF No. 1-6, at 120). Additionally, the court believed that counsel had consulted with Spicer prior to trial in planning their defense, *id.* at 193-94, but Hurt testified at the evidentiary hearing that Spicer could not meaningfully consult with him. *Id.* at 112-14, 117-120. The court reviewed affidavits from counsel stating that their files did not contain any investigative material, but concluded that those statements alone failed to show a failure to investigate. *Spicer*, 973 So. 2d at 194. However, Counsel's testimony at the evidentiary hearing shows

---

A habeas petition fails to exhaust state remedies when he presents material additional evidentiary support to the federal court that was not presented to the state court[, and] that a claim is not fairly presented if the additional evidence in federal court puts the claim in a 'significantly different and stronger position' than in state court.

777 F.3d 258 (citations and internal quotation marks omitted). In order to do so, "the new evidence must be so significant that it 'fundamentally alter[s] the legal claim' such that, in fairness, the claim ought to be "remitted to state court for consideration of that evidence." *Id.* (citations and internal quotation marks omitted).

that Barnett did not perform any legal research, and if Hurt did, it was limited to some portion of time on the day before trial. (ECF No. 1-6, at 74, 125-26). Neither Barnett nor Hurt interviewed anyone except Spicer's mother and aunt. They did not interview the State's witnesses, nor did they review their videotaped interviews. Neither considered hiring a private investigator, and neither considered consulting an expert. *See id.* at 77-89, 122-131.

Unlike in *Ward*, 777 F.3d 250 – upon which Spicer relies – where the new evidence was found to be simply duplicative of the "extensive testimony" regarding Ward's history of mental illness and troubling family life that had already been heard by the jury, the new evidence in the instant case provides the first affirmative support for Spicer's claim of ineffective assistance during the guilt phase of his trial. The Mississippi Supreme Court was compelled to take logical leaps in its factual conclusions because of significant gaps in the evidence presented to support Spicer's post-conviction petition. The testimony from the evidentiary hearing may very well fill some of those gaps. The Fifth Circuit's position on the present circumstances is clear:

> [W]e have consistently refused to consider a habeas petitioner's claims exhausted where the petitioner provides substantial amounts of new evidence, the claims and allegations before the state court were conclusory and undeveloped, the petitioner offers new evidence that could not have been derived from the state court record, and the petitioner offers new evidence which alters the nature of his claims.

*Sells v. Stephens*, 536 F. App'x 483, 491 (5th Cir. 2013). The new evidence upon which Spicer relies was adduced in the context of a state trial court evidentiary hearing, and it is the undersigned's opinion that comity and respect for the state

court process demand that this case return to the Mississippi Supreme Court, so that it may review its prior decision based on this new evidence.[4]

In so doing, this Court expresses no opinion on the ultimate outcome. Spicer might not prevail in seeking review in a subsequent trip to state court, but "[f]ear of not prevailing is no excuse to ignore the state court's primary right of first decision." *Battaglia v. Stephens*, __ F.3d __, No. 16-70009, 2016 WL 3084272, at *4 (5th Cir. Mar. 30, 2016). Under Mississippi's law of the case doctrine, the general principle is that a lower court may not exceed its mandate on remand, and the appellate court need not take up an issue on which it has already ruled. However, there are exceptions. Pertinently, an exception exists for where there are "material changes in evidence, pleadings or findings." *Cont'l Turpentine & Rosin Co. v. Gulf Naval Stores Co.*, 142 So. 2d 200, 207 (1962); *see also Lee v. Thompson*, 167 So. 3d 170, 176-77 (2014); *Simpson v. State Farm Fire and Cas. Co.*, 564 So.2d 1374, 1376-77 (1990) (overruled in part on other grounds). Another exception exists where the court, "after mature consideration," determines that its earlier decision was erroneous. *Brewer v. Browning*, 76 So. 267, 270 (1917); *see also J.K. v. R.K.*, 30 So. 3d 290, 296 (Miss. 2009).

---

[4] Were the Court to have found that the new evidence in fact merely "confirms and corroborates" the arguments made in state court – such that the claims were exhausted – the Court could not consider this new evidence upon review. As the undersigned interprets *Pinholster*, this Court's review of an exhausted claim must be limited to the record that was before the state court when it made its determination. 563 U.S. 170; *see Gallow v. Cooper*, 505 F. App'x 285, 296 (5th Cir. 2012); s*ee also Allen v. Stephens*, 805 F.3d 617, 625 (5th Cir. 2015); *Loden v. McCarty*, 778 F.3d 484, 494 (5th Cir. 2015); *Hoffman v. Cain*, 752 F.3d 430, 437 (5th Cir. 2014); *Escamilla v. Stephens*, 749 F.3d 380, 394 (5th Cir. 2014); *Ladd v. Stephens*, 748 F.3d 637, 645 n.62 (5th Cir. 2014); *Walton v. Banks*, 557 F. App'x 254, 257 n.4 (5th Cir. 2014); *Frank v. Cain*, 514 F. App'x 414, 415 (5th Cir. 2013).

In the context of post-conviction review, the discovery of new evidence may overcome the bar to a successive petition. Miss. Code Ann. § 99-39-23(6) (1972); *Mann v. State*, 73 So. 3d 564, 566 (Miss. Ct. App. 2011). The discovery of new evidence may also overcome the time bar on filing a postconviction petition. Miss. Code Ann. § 99-39-5(2)(a)(I); *Donnelly v. State*, 887 So. 2d 833, 835 (Miss. Ct. App. 2004). In the opinion of the undersigned, the objectives of the AEDPA – to "further the principles of comity, finality, and federalism," to "reduce piecemeal litigation," and to "streamline federal habeas proceedings" – will be furthered by directing Spicer to return to the Mississippi Supreme Court for review of the evidence that was produced during a hearing mandated by that court. *Panetti v. Quarterman*, 551 U.S. 930, 945-46 (2007).

Turning to Spicer's alternative request that this case be stayed pending exhaustion of claims in the state court, the Court finds that granting a stay is appropriate in the instant circumstances. This Court has the authority to stay a habeas petition and hold it in abeyance pending resolution of an unexhausted issue in state court. *Rhines v. Weber*, 544 U.S. 269, 274 (2005). Such a course of action is appropriate where (1) there is good cause for the failure to exhaust, (2) the unexhausted claims are not plainly non-meritorious, and (3) there is no sign of intentionally dilatory litigation tactics. *Id*. at 278; *see also Ayestas v. Stephens*, 817 F.3d 888, 899 (5th Cir. 2016). Here, it was not unreasonable for Spicer to believe that he could not return to the Mississippi Supreme Court with this claim; that court may ultimately refuse to review it. Therefore, good cause exists for the failure

to exhaust. Based on the refinement of the evidence through the testimony of the attorneys, this Court cannot say that his claim is substantively non-meritorious (although it stands in an unusual procedural posture). Finally, there is no indication that this was an intentional delay tactic.

For all of these reasons, the undersigned is of the opinion that this case should be stayed and the Mississippi Supreme Court should be given another opportunity to review Spicer's claim that his trial counsel was ineffective during the guilt phase of his trial. "If a defendant receives relief in state court, the need for federal habeas review may be narrowed or even obviated, and this furthers principles of 'comity, finality, and federalism.'" *Wall v. Kholi*, 562 U.S. 545, 558 (2011) (quoting *Williams v. Taylor*, 529 U.S. 420, 436 (2000)).

## RECOMMENDATION

Accordingly, the undersigned determines that this matter should be stayed, and Spicer should be required to return to the Mississippi Supreme Court with his claim that his trial counsel was ineffective in the guilt phase of his trial. The undersigned further recommends that this case be removed from the Court's active docket and that Spicer be required to notify the Court within thirty days of a final adjudication of his request to file a successive petition in state court.

## NOTICE OF RIGHT TO APPEAL/OBJECT

Pursuant to Local Uniform Civil Rule 72(a)(3),

> After service of a copy of the magistrate judge's report and recommendations, each party has fourteen days to serve and file written objections to the report and recommendations. A party must file objections with the

> clerk of the court and serve them upon the other parties and submit them to the assigned district judge. Within seven days of service of the objection, the opposing party or parties must either serve and file a response or notify the district judge that they do not intend to respond to the objection.

L.U. Civ. R. 72(a)(3); *see* 28 U.S.C. § 636(b)(1).

An objecting party must specifically identify the findings, conclusions, and recommendations to which he objects. The District Judge need not consider frivolous, conclusive, or general objections. A party who fails to file written objections to the proposed findings, conclusions, and recommendations shall be barred except upon grounds of plain error, from attacking on appeal any proposed factual findings or legal conclusions adopted by the Court to which he did not object. *Douglas v. United Servs. Automobile Assoc.*, 79 F.3d 1415, 1428-29 (5th Cir. 1996).

**SIGNED**, this the 16th day of August, 2016.

s/ *John C. Gargiulo*

JOHN C. GARGIULO
UNITED STATES MAGISTRATE JUDGE

24